IN THE MATTER OF JOHN W. YENGO, AN ATTORNEY
AT LAW.

Argued November 9, 1982—Decided February 8, 1983.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant, Disciplinary Review Board.

*Irving I. Vogelman* argued the cause for respondent.

PER CURIAM.

The respondent John W. Yengo has appealed from the Decision and Recommendation of the Disciplinary Review Board. The Board concluded that unethical conduct on the part of respondent was proved by clear and convincing evidence and recommended that respondent be suspended from the practice of law for a period of three months.

The conclusion of the Board that respondent was guilty of unethical conduct was virtually inescapable. It was based upon the record established in an antecedent contempt proceeding that resulted in judicial adjudications of respondent's contempt. *See In re Yengo*, 84 *N.J.* 111 (1980). Further, respondent completely failed in these proceedings to present any further evidence that would cast an exculpatory light upon his conduct.

The Board accurately portrayed the basic facts in its determination, viz:

> The respondent represented one of the ten defendants in a multiple defendant gambling conspiracy trial. The complex nature of the case and of the proofs to be considered, as well as the number of defendants and of their attorneys presented numerous difficulties. Bad weather resulted in three separate postponements of the scheduled trial date. The judge frequently instructed counsel that regular attendance was required and that tardiness or absence without her prior approval would not be tolerated and would result in the imposition of sanctions.

> Witnesses were called and testimony taken beginning on February 21 of 1978. On February 22, respondent requested that the judge resolve a scheduling conflict with another judge. He appeared at trial beginning on February 21 through March 1. On March 2, he failed to appear. Although he failed to notify the Court of his anticipated absence, he had discussed the matter with the prosecutor, other defense counsel and his client. Additionally, respondent had arranged for the appearance of a young attorney-associate on behalf of his client, and the Court was advised by respondent's client that he consented to representation by the associate in respondent's absence.

> The trial judge was concerned with the associate's apparently limited knowledge of the case before her. She was, however, unable to locate the respondent, although she placed calls to his answering service and to his home. She did speak with respondent's daughter, who advised the Court that respondent was in Bermuda on a four day vacation and would return on Sunday, March 5.

> The trial judge determined to continue with the trial. Rather than citing the respondent for his unapproved absence on March 2 and March 3, the judge forwarded a telegram to respondent's home ordering him to appear before her

on the next trial date, March 6, at 9:00 A.M. Respondent appeared in Court on March 6, and advised the Court that he had been in Bermuda on business for a supermarket, and did not communicate with the Court because he was unaware that he would be going to Bermuda until late on March 1. He further explained that he did not intend to cross-examine the State's witness who testified on March 2 and 3.

The Board in effect adopted the determination of the trial judge citing respondent for contempt. In the words of the court, quoted in the Board's decision,

The action of John Yengo, Esq. in going to Bermuda for two court days in the third week of a five-week, complex wiretap gambling conspiracy case with ten defendants and a seventeen-member jury without prior notice and approval of the Court and without leaving word as to where he could be reached, constituted a disruption in the Court proceedings, disobedience of the Court order prohibiting involvement in other proceedings, a lack of respect for the Court, a lack of professional responsibility, as well as conduct prejudicial to the administration of justice.

As noted by the Board, this Court (84 *N.J.* 111) affirmed the finding of contempt by the trial judge.

The District Ethics Committee in this matter concluded that respondent violated *DR* 1–102(A)(5), conduct prejudicial to the administration of justice, and *DR* 7–106(C)(7), the intentional violation of an established rule of procedure. The Committee recommended the issuance of a letter of private reprimand, suggesting that the actions of respondent occurred some time ago and resulted in a $500 fine and a reported judicial opinion upholding the contempt conviction. The Committee believed this constituted adequate public punishment.

The Board differed with the Committee as to the appropriate *quantum* of discipline. While it concurred in the Committee's conclusion that respondent's conduct violated both *DR* 1–102(A)(5) and *DR* 7–106(C)(7), the Board also determined that respondent's action was clearly discourteous and degrading to the trial court. The conduct therefore also constituted a violation of *DR* 7–106(C)(6), which specifically forbids a lawyer from engaging "in undignified or discourteous conduct which is degrading to a tribunal."

The Board, as noted, recommended that respondent be suspended for a period of three months. We agree completely with the Board's reasoning that respondent's action merits public discipline. We also agree with the Board's rejection of the Committee's recommendation of a private reprimand on the ground that the adjudication for contempt is sufficient public punishment. The Committee's position fails to appreciate the gravity of respondent's ethical derelictions and the pernicious impact that such conduct can have upon the administration of justice.

The Board properly observed that respondent has been admitted to practice law in this State for over 30 years and, as a long-time practitioner, he should have been fully cognizant of the conduct required of an attorney at trial. The Board further noted that "[t]he respondent's arrogance in absenting himself from a lengthy and complicated criminal trial for a non-emergent business and pleasure trip without prior notice to an approval by the trial judge indicates that the respondent considers himself to be exempt from these standards of conduct."

The bulk of the evidence of respondent's ethical misconduct was developed in the prior contempt action. In the current proceedings, respondent did not improve his ethical posture. He continued to assert strenuously and obtusely that he had done nothing wrong, that he was in fact victimized by the trial judge, that he was treated discriminatorily compared with other defense attorneys at the trial, and that he had a reasonable excuse to be absent from the trial. His characterization of the trial judge was intemperate and bordered upon vilification. The record in these disciplinary proceedings reconfirms the evidence that was developed in the former contempt action from which we concluded that respondent's conduct was contemptuous and his explanation of his behavior was "frivolous" and "clearly inadequate," 84 *N.J.* at 128, and according to which the Appellate Division expressed total agreement with the trial judge's assessment of respondent's conduct and "no doubt that [the

conduct] was indisputably and egregiously contumacious," 84 *N.J.* at 136 (cited in concurring opinion).

The Board commented further in its determination here that respondent's attitude is apparently persistent and unrepentent, and consistent with abuses of the judicial process and lack of respect for the administration of justice demonstrated ·in the past by respondent, which resulted in his removal as a municipal court judge by this Court. *In re Yengo,* 72 *N.J.* 425 (1977). Respondent's attitude evinced in these proceedings, superadded to the conduct that gave rise to the original contempt and the pending ethical violations, constitutes a continuing affront to the authority of the courts. At the very least, this professional misconduct requires public, not private, discipline. This behavior further strongly suggests, if it does not convincingly demonstrate, professional unfitness and lack of responsibility. Consequently, we can understand the Board's recommendation that respondent be disciplined publicly and, further, that he be suspended from the practice of law.

Nevertheless, we content ourselves in these proceedings with the imposition of discipline in the form of a public reprimand. We are motivated to do so essentially for a single reason, namely, the presence of undeniable mitigating circumstances— albeit not related to the respondent's misconduct—that warrant some leniency. Respondent points to his age, his failing health, his wife's precarious health and his actual reduction and imminent withdrawal from the practice of law. In giving weight to these factors only by way of mitigation, we observe that while respondent has placed himself at sword's point with the judiciary, he remains a worse enemy to himself. It has not been shown that his clients have suffered at his hands or that he has been guilty of venality, dishonesty, or gross professional neglect.

We publicly reprimand respondent for his misconduct. The Court further orders him to reimburse the Administrative Office of the Courts for appropriate administrative costs, including the production of transcripts.

*For reprimand*—Chief Justice WILENTZ and Justices CLIF-FORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*Opposed*—None.

## ORDER

The Disciplinary Review Board having filed a report with this Court recommending that JOHN W. YENGO of JERSEY CITY be suspended from the practice of law for a period of three months; and good cause appearing;

It is ORDERED that JOHN W. YENGO be and hereby is publicly reprimanded and that a permanent record of this reprimand shall be retained in respondent's file; and it is further

ORDERED that JOHN W. YENGO reimburse the Administrative Office of the Courts for appropriate administrative costs incurred in this matter, including the production of transcripts.